**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VENODHAR R. JULAPALLI, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-02061 |
| | § | |
| MARC L. BOOM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Plaintiff Venodhar R. Julapalli, M.D. ("Julapalli") alleges civil rights violations stemming from his refusal to comply with a COVID-19 vaccination policy affecting his clinical privileges to practice medicine at a hospital. Pending before me is Defendants' Rule 12(b)(6) Motion to Dismiss. Dkt. 18. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be **GRANTED**.

### BACKGROUND[1]

Julapalli is a board-certified gastroenterologist who had clinical privileges to practice medicine as a medical staff member at Houston Methodist The Woodlands Hospital[2] from 2019 to 2021. On March 31, 2021, Houston Methodist announced a policy requiring its employees to be vaccinated against COVID-19

---

[1] These facts come from the live pleading, which is Julapalli's First Amended Complaint ("the Complaint"). Dkt. 21. Julapalli filed his First Amended Complaint *after* Defendants filed their Motion to Dismiss. In their reply, Defendants ask that I apply their Motion to Dismiss to the First Amended Complaint, contending that Julapalli's new factual allegations do not change the analysis. *See* Dkt. 20 at 4–10. Julapalli filed a sur-reply and did not oppose Defendants' request. As I stated at the March 20, 2024 status conference, I will consider Julapalli's First Amended Complaint in deciding Defendants' Motion to Dismiss.

[2] "Houston Methodist The Woodlands Hospital" is one hospital within the Houston Methodist system. I will refer to the Houston Methodist system as "Houston Methodist," and to "Houston Methodist The Woodlands Hospital" as "Methodist Woodlands."

("the Policy"). The Policy contained exemptions for medical and religious reasons. Requested exemptions were subject to review by Houston Methodist. On April 26, 2021, Houston Methodist Executive Vice President and Chief Physician Executive Robert A. Phillips ("Phillips") notified medical staff members, including Julapalli, that unvaccinated credentialed medical staff members who had not been approved for an exemption "will be subject to automatic suspension of clinical privileges effective June 7, 2021." Dkt. 21 at 26.

On June 3, 2021, Julapalli requested a religious exemption. On June 4, 2021, Houston Methodist denied the request. On June 9, 2021, Julapalli received notice that his clinical privileges at Houston Methodist were suspended because he "Fail[ed] to Receive the COVID-19 Vaccine or an Approved Exemption." *Id.* at 33. On May 18, 2022, Julapalli received notice that his "privileges had been automatically relinquished effective July 22, 2021." *Id.* at 38.

Julapalli filed the instant lawsuit on June 6, 2023 against Named Individuals[3]; John Doe Individuals[4]; and Houston Methodist Entities[5] (collectively, "Defendants"). Julapalli asserts the following claims against Defendants pursuant to 42 U.S.C. § 1983: (1) violation of the Free Exercise Clause of the First Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; (3) violation of the Substantive Due Process Clause of the Fourteenth Amendment; (4) violation of the Procedural Due Process Clause of the

---

[3] Named Individuals include the following executives and employees of Houston Methodist and Methodist Woodlands: Marc Boom ("Boom"), Phillips, Dirk Sostman ("Sostman"), Roberta Schwartz ("Schwartz"), Carole Hackett ("Hackett"), Susan Miller ("Miller"), Krystle Riley ("Riley"), Lucas Duvall ("Duvall"), Marc R. Labbé ("Labbé"), Jason Knight ("Knight"), and Debra Sukin ("Sukin"). Julapalli asserts claims against Named Individuals in their official and individual capacities.

[4] John Doe Individuals include six unspecified individuals employed by Houston Methodist. Julapalli attempts to bring claims against John Doe Individuals in their official and individual capacities.

[5] Houston Methodist Entities include The Methodist Hospital d/b/a Houston Methodist ("Houston Methodist") and Methodist Health Centers d/b/a Houston Methodist The Woodlands Hospital ("Methodist Woodlands").

Fourteenth Amendment; and (5) violation of procedural due process under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101–11152. Additionally, Julapalli seeks a declaratory judgment that "Defendants performed state action and acted under color of state law by implementing the Vaccine Mandate." Dkt. 21 at 44.

Defendants advance four arguments for dismissal: (1) Julapalli did not satisfy the two-year statute of limitations for § 1983 claims; (2) Defendants did not act under color of state law for purposes of § 1983 liability; (3) the HCQIA does not provide a private cause of action; and (4) Julapalli's declaratory relief claim is redundant.

## LEGAL STANDARDS

### A.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

A complaint may be dismissed if a plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, [but] conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation omitted). Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

### B.  LITIGANTS WITHOUT LAWYERS

A complaint filed by a litigant without a lawyer, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). "Liberal construction is afforded to *pro se* litigants to serve as a shield, in line with the 'congressional goal of assuring equality of consideration for all litigants.'" *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)). *Pro se* litigants, however, must still comply with the Federal Rules of Civil Procedure. *See Carmouche*, 77 F.4th at 367–68 (noting that *pro se* complaints must still comply with Rule 8's notice pleading requirements).

### C.  42 U.S.C. § 1983

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (quotation omitted). "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted).

## ANALYSIS

### A.  DEFENDANTS DID NOT ACT UNDER COLOR OF STATE LAW

I will assume, without deciding, that Julapalli's § 1983 claims are not time-barred. Even so, they should be dismissed because Julapalli has failed to sufficiently allege that Defendants acted under color of state law for purposes of § 1983 liability.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was *committed by a person acting under color of state law*." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (quoting *West v.*

*Atkins*, 487 U.S. 42, 48 (1988)). "Restated, mere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish*, 402 F.3d at 549 (cleaned up). For purposes of § 1983, a party is a state actor either "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

It is well established that "a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). "[T]o qualify as a traditional, exclusive public function within the meaning of [the U.S. Supreme Court's] state-action precedents, the government must have traditionally *and* exclusively performed the function." *Manhattan Cmty. Access*, 587 U.S. at 809.

Julapalli asserts the actions taken against him by Defendants—all private entities and their employees—are chargeable to the government. He argues "Defendants' instituting and enforcing their Vaccine Mandate on [him] is action traditionally the exclusive province of the state and therefore redressable under § 1983." Dkt. 20 at 27. He argues Defendants took on the traditional and exclusive public function of "mandatory vaccination *to promote the health of the public in the face of an epidemic.*" *Id.* at 28. But Julapalli incorrectly frames the issue.

"[W]hether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" *Cornish*, 402 F.3d at 550 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). Defendants' conduct in question here is the suspension of Julapalli's clinical privileges. In other words, Julapalli must allege that Defendants' decision to suspend his clinical privileges is fairly attributable to the State. *See Cornish*, 402 F.3d at 550 ("Therefore, at issue is whether [*Defendants'*] *decisions as an employer* are fairly attributable to the State."); *see also George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) ("The relevant inquiry is

whether [Defendants'] *role as an employer* was state action." (quotation omitted)).[6] Julapalli has not plausibly alleged facts indicating how Defendants' decision to enforce the Policy by suspending his privileges is related to governmental action. A private business may discipline its independent contractor for non-compliance with its policies. That is the situation here. As such, Julapalli has not alleged that Defendants acted under color of state law for purposes of § 1983 liability.

Further, even if I had considered whether Defendants took on the traditional and exclusive governmental function of "mandatory vaccination *to promote the health of the public in the face of an epidemic*," Dkt. 20 at 28, that argument is unconvincing. "A private business's implementation of an employee vaccination policy is not akin to any of 'those limited activities—for example, running a city—that have traditionally *and exclusively* been performed by the government.'" *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 800 (W.D. Tenn. 2022) (quoting *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020)); *see also Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 467 (M.D. Pa. 2022) ("The [State]'s duty to protect the health of the people and employ the most effective methods of disease suppression is not exclusive."). As Defendants point out, "promotion of public health is not, nor has it ever been, the exclusive realm of the State." Dkt. 23 at 14. Houston Methodist's vaccination policy does not even approach the traditional and exclusive standard required to establish state action. *See Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 87 (1st Cir. 2022) (holding that hospital "is not a state actor and is not bound by the Free Exercise Clause" in employees' suit to stop application of mandatory COVID-19 vaccination

---

[6] Julapalli and Defendants agree that Julapalli has never been an employee of Defendants. Instead, Julapalli was an independent contractor who held privileges to practice medicine at Methodist Woodlands. *See Berel v. HCA Health Servs. of Tex., Inc.*, 881 S.W.2d 21, 23 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("A doctor who has been selected by the patient is generally considered to be an independent contractor with regard to the hospital at which the doctor has staff privileges."). This fact has no bearing on whether Defendants acted under color of state law.

6

policy); *Curtis v. PeaceHealth*, No. 3:23-cv-05741, 2024 WL 248719, at *6 (W.D. Wash. Jan. 23, 2024) (plaintiffs failed to establish that healthcare facility's "enforcement of its Policy [to require its employees to be vaccinated against COVID-19] was a public function" as required to make it a state actor"); *McEntee v. Beth Israel Lahey Health, Inc.*, No. 22-cv-11952, 2023 WL 4907617, at *4 (D. Mass. Aug. 1, 2023) (holding that private healthcare facilities that terminated employees for failure to comply with its mandatory COVID-19 vaccination policy could not be considered state actors); *Pa. Informed Consent Advocs. Inc. v. Univ. of Pa. Health Sys.*, No. cv-21-4415, 2022 WL 2316648, at *2 (E.D. Pa. June 28, 2022) ("Although Plaintiff argues [the health system] became a state actor by instituting its vaccine mandate, Plaintiff has not adequately pled any facts to support that contention."); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 639 (E.D. Ky. 2021) ("Private hospitals . . . are generally not state actors for purposes of constitutional questions.").

Therefore, Julapalli's § 1983 claims—(1) violation of the Free Exercise Clause of the First Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; (3) violation of the Substantive Due Process Clause of the Fourteenth Amendment; and (4) violation of the Procedural Due Process Clause of the Fourteenth Amendment—should be dismissed.

### B. THE HCQIA DOES NOT PROVIDE A PRIVATE CAUSE OF ACTION[7]

Julapalli asserts a claim under the HCQIA, which Congress passed due to its concerns about "[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care" and because "[t]here is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(1), (2). "Congress viewed peer review as an

---

[7] Although Julapalli portrays his HCQIA claim as a § 1983 claim, the HCQIA has no relation to § 1983. *See Monroe v. AMI Hosps. of Tex., Inc.*, 877 F. Supp. 1022, 1028 (S.D. Tex. 1994). Because I am required to construe Julapalli's Complaint liberally, I will treat his HCQIA claim as separate from his § 1983 claims.

important component of remedying these problems, but recognized that lawsuits for money damages dampened the willingness of people to participate in peer review." *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008). "Accordingly, Congress granted limited immunity from suits for money damages to participants in professional peer review actions." *Id.* (cleaned up).

But while the HCQIA provides immunity in certain situations, it does not provide a private cause of action. *See Zawislak v. Mem'l Hermann Health Sys.*, No. 4:21-cv-3098, 2022 WL 4359231, at *2 (S.D. Tex. July 25, 2022) ("[T]he HCQIA . . . does not create a private cause of action."); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 06-cv-194, 2006 WL 2370670, at *3 (N.D. Tex. Aug. 16, 2006) ("[A]ll circuit courts to address the issue have uniformly agreed that the [HCQIA] 'does not create a private right of action in favor of a physician against a professional peer review group that has violated due process.'" (quoting *Hancock v. Blue Cross-Blue Shield of Kan., Inc.*, 21 F.3d 373, 374 (10th Cir. 1994))) (collecting cases); *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, No. 03-442, 2005 WL 8155168, at *5 (M.D. La. Aug. 4, 2005) (The "HCQIA does not explicitly or implicitly afford an aggrieved physician with a cause of action when a hospital or physician fails to follow HCQIA's prescribed peer review procedures."); *Rogers v. Columbia/HCA of Cent. La., Inc.*, 971 F. Supp. 229, 237 (W.D. La. 1997) ("The question presented is whether the HCQIA provides a private cause of action. The statute does not explicitly provide a cause of action. We also find that the HCQIA does not imply a private right of action."), *aff'd*, 140 F.3d 1038 (5th Cir. 1998). Because the HCQIA does not create a private right of action, Julapalli's purported claim under the HCQIA must fail.

### C. JULAPALLI'S DECLARATORY JUDGMENT CLAIM IS REDUNDANT

Julapalli also seeks a declaratory judgment that "Defendants performed state action and acted under color of state law by implementing the Vaccine Mandate." Dkt. 21 at 44.

8

"The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). I have "broad discretion to grant (or decline to grant) declaratory judgment." *Wilton v. Seven Falls Co.*, 41 F.3d 934, 935 (5th Cir. 1994). "Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-cv-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) (collecting cases).

I have already found that Defendants did not perform state action and did not act under color of state law by implementing the Policy. This issue has been resolved within Julapalli's other claims. As such, Julapalli's declaratory judgment claim is redundant and should be dismissed.

## CONCLUSION

For the reasons explained above, I recommend Defendants' Rule 12(b)(6) Motion to Dismiss (Dkt. 18) be **GRANTED** and this case be dismissed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 31st day of May 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

9